## SUPREME COURT.

John McClave, respondent agt. E. T. Maynard, appellant.

Where the plaintiff, a *real estate broker*, had been employed by the defendant to sell or exchange for him certain real estate, a farm and four lots; the farm he would sell for $5,000, or would exchange the whole for $13,000; and agreed to pay plaintiff's commissions at the rate of two and a half per cent: After a purchaser had been introduced to defendant by the plaintiff, and some considerable delay at negotiations, at which the defendant became dissatisfied, and requested the plaintiff to find him another purchaser, but upon plaintiff's request negotiations were renewed, and an exchange finally made, but the defendant insisted that the purchaser should pay the plaintiff's commissions, which was agreed to by the plaintiff in a note to defendant, by the purchaser, as follows:

"Mr. B. (the purchaser), has agreed to assume the payment of your commissions on the exchange of property between you. Therefore, whatever you do will be in consideration of that fact." "Mr. B.'s promise is satisfactory to me."

*Held,* that evidence offered by the defendant at the time of the delivery of this note, under the question: "At the time you (the purchaser) received the letter from McClave (plaintiff), what was said between you?" should have been received, and it was error to exclude it, as the plaintiff claimed that the amount of commissions fixed with B., the purchaser, was $100, provided the valuation was $5,000, as he represented it to be; when in fact, the amount of the exchange was $13,000.

Any thing said by the plaintiff relating to the subject in controversy, was admissible, when offered by the defendant.

*New York General Term, January,* 1867.

*Before* Leonard, *P. J.;* Ingraham *and* Clerke, *Justices.*

Action to recover three-hundred and seventy-five dollars, amount of commissions for negotiating the sale or exchange of real estate. The plaintiff is a real estate broker in this city. The defendant, in or about the month of December, 1863, was a resident and the owner of certain real estate, at

Caldwell in New Jersey, which estate consisted of a farm and four houses. In the month of December he called on the plaintiff, as a broker, and desired him to sell or exchange this real estate for him. The defendant instructed the plaintiff to sell the farm for $5,000, or to exchange the whole property. Directed the plaintiff to find a purchaser, and send him to defendant, and he would pay the plaintiff commissions upon what was sold.

The plaintiff found a purchaser for defendant's real estate, and introduced such purchaser to the defendant. The defendant and the purchaser, whose name was Beach, entered into a contract by which the defendant was to give Beach his real estate in New Jersey for New York and Brooklyn property, at a valuation of $13,000.

The defendant passed his property, under this contract, on the 9th of April, 1864, with the understanding that he was to pay commissions to the plaintiff. By the terms of the contract entered into by defendant and Beach it appeared on the trial, that the commissions due from the defendant to the plaintiff were to be paid by Beach. This contract between Beach and the defendant was concealed by them from the plaintiff, and he had no knowledge of its existence, or of its terms and consideration, until just previous to commencing this suit, and long after the exchange had been concluded. On the 8th of April, 1864, when the defendant and Beach were about passing the title, the defendant sent Beach to the plaintiff to arrange about his (defendant's) commissions, and to procure from the plaintiff some writing which defendant might hold as a bar to any claim which the plaintiff might make against him for commissions.

Mr. Beach, in obedience to the directions of defendant, went to the plaintiff and arranged for defendant's commissions, by agreeing to assume them, stating to the plaintiff that the property exchanged by the defendant was but $5,000.

The plaintiff, relying upon the statements of Beach, fixed

the amount of defendant's commissions at $100, provided the valuation was $5,000; and, thereupon, at the direction of, Beach, notified the defendant that Beach had agreed to assume the payment of his commissions, and that Beach's promise was satisfactory. The plaintiff, by reason of the representations of Beach, was induced to, and at the dictation of Beach, did write the following letter:

" Mr. B. (the purchaser), has agreed to assume the payment of your commissions on the exchange of property between you. Therefore, whatever you do will be in consideration of that fact." " Mr. B.'s promise is satisfactory to me."

The defendant's answer admits the employment of the plaintiff, and that he negotiated the exchange of defendant's property, *and it appears, by the defendant's own showing,* that the property exchanged by him was passed at $13,000. The defendant, in his answer, as defense to this action, avers that the plaintiff agreed with the purchaser of the defendant's property, that the commissions chargeable to the defendant on said exchange should be borne and paid by the purchaser, as the payer of said commissions, in the place and stead of the defendant, and so notified the defendant; and, on the trial, in support of this agreement, he offered, as evidence, the paper writing marked "A."

It is admitted that the defendant exchanged property to the value of $13,000, with Beach, and upon which commissions were chargeable.

The defendant insists that this agreement and paper writing marked "A," form a perfect discharge of defendant from all liability exceeding $100; that a tender of of that sum has been made by Beach to plaintiff.

The plaintiff admits that Beach promised and agreed to pay defendant's commissions, and that he wrote exhibit "A." and sent it to the defendant. He swears, however, that he was induced to accept that agreement, and write exhibit "A." by reason of the fraudulent statements made, by Beach to

him, in reference to the amount of property exchanged by the defendant; that defendant had sent Beach to the plaintiff to arrange about defendant's commissions, and, in reply to the request of the defendant, made through Beach, the plaintiff accepted the agreement and promise of Beach to pay defendant's commissions, and wrote and sent to defendant exhibit "A." The plaintiff swears that Beach had been sent to him by defendant for the express purpose of arranging about defendant's commissions, and that Beach then stated to plaintiff that defendant had exchanged but $5,000 worth of property.

The plaintiff swears that he did not know of the contract between defendant and Beach. The defendant admits that he did not tell the plaintiff of that contract. Beach swears that he did not show it him.

The defendant and Beach had each a copy of the contract, but admit that they did not allow the plaintiff to see it.

The plaintiff testified that Beach had been sent to him by defendant to arrange about (his) defendant's commissions. This evidence of the plaintiff, fixing Beach as the agent of the defendant, is not, in any form, denied by defendant or Beach. The plaintiff further testified that, in arranging about the defendant's commissions, Beach fraudulently and deceitfully represented to plaintiff that the only property that the defendant exchanged was that contained in exhibit 1, at $5,000. The plaintiff testified that, under these fraudulent representations made by Beach and the deceit practiced by him in being silent as to the full amount of the exchange, he accepted the agreement and promise of Beach, and wrote exhibit "A." The plaintiff testified that "the amount fixed with Beach was $100, provided the valuation was $5,000. This evidence is not denied by Beach or defendant. As to the tender there is no evidence showing that Beach made a tender of $100 for the commissions of the defendant exclusively, but that he coupled with it a discharge of himself from all liability.

McClave agt. Maynard.

## T. STUYVESANT and L. B. PERT, for defendant, appellant.

I. The original employment of plaintiff to sell or exchange the property cannot be held binding upon defendant.

Because,

1. Whatever may have been the terms and conditions of that employment, the whole matter was abandoned and rescinded.

Defendant notified plaintiff to procure another purchaser—that he would not deal with Beach.

And when plaintiff informed Beach of the fact, and offered to take $100 for his commissions if negotiations were renewed; and again when he agreed in writing to look to Beach for his commissions, he consented to and acquiesced in the recision of the original agreement.

That agreement, therefore, was wholly at an end.

One who employs another to do certain work for him may countermand the order, and the other has no right to proceed further. (*Clark* agt. *Marsiglia*, 1 *Den.* 317.)

2. Because a new agreement was substituted in place of the original employment.

And this was done at plaintiff's request or on his consent. In either case, the recision was complete and binding upon plaintiff, upon his own authority and acquiescence.

II. The law justly applied to the facts of this case should estop the plaintiff from maintaining any claim against defendant.

1. The original employment was verbal. The transaction was an exchange of property, in which, according to the circumstances, or agreement of parties, either might be liable for commissions. Both could not be. (*Watkins* agt. *Causall*, 1 *E. D. Smith*, 65 ; *Vanderpoel* agt. *Kearns*, 2 *id.* 170 ; *Dunlap* agt. *Richards*, 2 *id.* 181 ; *Pugsly* agt. *Murray*, 4 *id.* 245.)

And the parties were as competent to change the agreement as they were to make it originally.

2. A new arrangement was made, as we have seen under point I., and plaintiff clothed his acquiescence in writing, and became one of the contracting parties to that change.

3. But, more than this, he was a principal actor. He informed Beach of the abandonment, and with an eye to commissions, requested Beach to see defendant and renew negotiations.

And whether he offered to take $100, or consented to it on Beach's offer, it was by his own procurement in whole or in part, and upon terms wholly or in part originating with himself that the thing was accomplished.

4. Besides this, defendant made it an express condition that Beach alone should settle with plaintiff for his commissions.

5. To such a case the law of estoppel eminently applies.

Plaintiff's acts having influenced the conduct of defendant must conclude the former. (1 *Greenleaf on Ev.*, §§ 27, 195, 196, 207.)

The present claim is inconsistent with plaintiff's consent and agreement, upon which alone defendant acted. (*See Plumb* agt. *Cattaraugus County Mutual Insurance Co.*, 18 *N. Y. R.*, (4 *Smith*,) 392.)

III. It is no answer to say that the new arrangement was an agreement to answer for the debt of another.

1. Beach was as competent to bind himself as defendant—and this he might do verbally or otherwise, for the old agreement was abandoned when he and plaintiff planned the scheme of renewal.

2. Beach was a party to the exchange, and since in such case the broker. cannot recover commissions of both. (*Watkins* agt. *Causall*, 1 *E. D. Smith*, 65, *and other cases cited above.*) Plaintiff's election and his agreement to look to Beach must be conclusive to bind him and plaintiff.

3. In any event the agreement is binding upon plaintiff, being in writing, and upon sufficient consideration.

4. As where a broker is paid by the purchaser he cannot recover of the seller employer. (*Dunlop* agt. *Richards*, 2 *E. D. Smith*, 181.)

So where there is an agreement for such payment, the broker must rely upon that.

IV. It was said upon the trial—and may be urged here—that plaintiff is not concluded by the new arrangement, because he was misled into the belief that the property exchanged was only $5,000.

There is no proof or pretence that defendant practiced any deception, and the only evidence that Beach did is that of plaintiff alone ; and upon this, in some mysterious way, through the agency of Beach, defendant's liability is sought to be revived.

Plaintiff testifies that when he wrote exhibit "A." he did not know the exact amount—that he wrote it and made the promise on the supposition that only $5,000 of property passed—that he wrote it before he ascertained that $13,000 was the value ; and that it was about the time that Beach told him it was $5,000. And yet in the same breath he says that Beach stated to him that the property described in exhibit 1, was all that passed.

Now it was this very property that he was employed about ; he knew it was exchanged, while exhibit 1, shows upon its face that the farm alone was valued at $5,000, and there were four houses in addition.

Moreover, defendant says he offered the farm at $5,000, or to exchange the whole at $13,000 ; and he left also a description of the four houses, and Beach testifies that he stated the value to plaintiff at $13,000.

A plaintiff uncorroberated, who sometimes keeps books, and sometimes not—who never enters half his commissions, and made no entry in this case, who contradicts the very basis of his employment, and who is disputed by two witnesses, cannot be relied upon to show that he was deceived.

V. The referee erred in denying the motion to dismiss the complaint.

1. There was no evidence that the property was sold or exchanged for the defendant, but on the contrary, it was actually for Beach.

2. It was abundantly shown that whatever plaintiff's commissions were to be, plaintiff was to look to Beach for them, and not to defendant.

3. The plaintiff, if misled, should look to Beach for redress.

VI. The referee erred in excluding evidence when offered by defendant, of what was said between Beach and plaintiff, when exhibit "A." was written, and in admitting the same evidence when offered for plaintiff.

Which ever ruling was right, the other must be wrong.

VII. The findings of the referee are against law and evidence, and wholly erroneous, and for reasons stated in the exceptions to that report, the judgment should be reversed.

HENRY DAILY, Jr., *for plaintiff, respondent.*

*First.* The employment of the plaintiff by defendant to exchange his property, and that the property was exchanged at a valuation of $13,000, is admitted. The only question left for decision is, can the verbal promise and agreement of Beach to

the plaintiff to pay the defendant's debt for commissions, and the notification by plaintiff to the defendant that this promise and agreement of Beach was satisfactory, be set up as a valid bar to this action?

I. The agreement, as set up in the answer, or appears in the evidence, is not in writing, expresses no consideration, and is therefore void by the statute of frauds. It is an agreement to answer for the debt of another. (2 *R. S.* 221, § 2, *sub.* 2; *Sackett* agt. *Palmer*, 25 *Barb. R.* 179; *Brewster* agt. *Silence*, 4 *Seld. R.* 207; *Mallory* agt. *Gillett*. 23 *Barb. R.* 610.)

*Second.* The defendant sent Beach to the plaintiff to arrange about the commissions, and Beach, in obedience to such instructions, did arrange for the commissions, by agreeing to assume or pay them himself, stating to the plaintiff that the valuation of the property passed was only $5,000, and the plaintiff, relying upon the representations of Beach, wrote and sent to the defendant the paper marked "A." The representations of Beach were false and deceitful and the plaintiff was misled.

II. The agreement set up in the answer, or as proven on the trial, and the notice of it by plaintiff to the defendant, even if the statute of frauds did not apply, are *inoperative* and void, and have no binding force upon the plaintiff, by reason of the fraud and deception practiced by Beach. The defendant, having sent Beach to the plaintiff to arrange for the commissions, *constituted Beach his agent* for that purpose, and the defendant is bound by the acts of Beach in making that arrangement. (*Story on Agency*, §§ 134, 135; *Jefferson* agt. *Bigelow*, 13 *Wend.* 518.)

III. The paper writing marked "A." and produced in evidence, on the trial, by the defendant, is simply written proof of the verbal agreement and promise of Beach to pay the debt of the defendant, and a notice to the defendant that Beach had made such agreement and promise to the plaintiff, *and in no manner contains words of release and discharge.*

IV. The referee's finding of fact will not be disturbed unless grossly against evidence, and is as conclusive as the verdict of a jury.

INGRAHAM, J. I think the referee erred in excluding the evidence offered at folio 51. The question was, what was said between them when the defendant received the letter from McClave. This was excluded.

Previous to that, McClave had on proof of his letter to defendant saying that he would accept Mr. Beach's promise to pay the commissions, stated that at that time he was not informed as to the exact amount that had passed between them, and he was also permitted to state what his suppositions were when he wrote that letter. It was clearly the right of the defendant to show what conversation passed between them when the letter was delivered. It was not negotiation previous to writing the letter, but what took place when defendant received it.

In addition to this, if the defendant acted on the plaintiff's letter, and was guilty of no fraud, it would be immater-

. ial what the plaintiff supposed was the amount. He chose to take Beach for his pay-master rather than have the contract fail, and on his promise to do so the defendant acted.

If Beach deceived him, the plaintiff is not responsible.

The judgment should be reversed, and case referred back to referee.

LEONARD, J.   The evidence excluded at fol. 51 was admissible.   It related to an admission by plaintiff, and was offered by defendant.   Anything said by the plaintiff relating to the subject in the controversy was admissible, when offered by defendant.

The judgment should be reversed, costs to abide the event.

CLERKE, J., *dissenting.*   When the defendant first called upon the plaintiff, he employed the latter to sell for him a farm in New Jersey, consisting of sixty-five acres, which he valued at five thousand dollars; he also said he had other property, which he wanted to sell; he promised to pay the plaintiff a commission at the rate of two and a half per cent. The property other than the farm, which he wanted to sell, consisted of four houses, also in New Jersey.   The defendant testifies that he called upon the plaintiff in December, 1863, or January, 1864, and offered to sell the farm for five thousand dollars, or to exchange the whole for thirteen thousand dollars.   Both parties testify that the plaintiff introduced a Mr. Beach to the defendant for the purpose of negotiating an exchange of this property in New Jersey for property which Mr. Beach owned in New York and Brooklyn.   They agreed on the exchange; but the defendant says he became dissatisfied in consequence of Beach's dilatoriness in consummating the bargain, and he says he told the plaintiff to procure him another purchaser; but, within a few days after, Beach called and satisfactorily explained the cause of the delay, and the bargain was consummated, the defendant's

property being estimated in the exchange at thirteen thousand dollars. Afterwards, the plaintiff agreed to receive one hundred dollars for his commissions, and to look to Beach for the payment of this sum. But the plaintiff testifies that he promised to do this because, from defendant's silence and from what Beach had expressly told him, he believed that the property of the defendant, which was disposed of, was only of the value of five thousand dollars. If this is true, he was certainly not bound by this promise, even if it amounted in all other respects to a valid agreement. The referee gave credence to the plaintiff's testimony on this point, in preference to that of the defendant, and I see no reason why his conclusion should be disturbed.

With regard to the exclusion of evidence at fol. 51, this evidence was actually admitted at another stage of the trial, and was fully submitted to the referee.

The judgment should be affirmed, with costs.